IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JEFF DAVIS : CIVIL ACTION

v. :

GAMESA TECHNOLOGY CORP., et al. : NO.  08-4536

**<u>MEMORANDUM OF DECISION</u>**

THOMAS J. RUETER October 20, 2009
Chief United States Magistrate Judge

Presently before the court are plaintiff's motion to compel production of

documents and interrogatory responses (the "Motion") (Doc. No. 27)[1] and defendants' opposition

thereto (Doc. No. 30).  The court held a hearing on the Motion on September 8, 2009, and also

considered post-hearing letter briefs of the parties dated September 10 and 24, 2009 (plaintiff)

and September 14, 2009 (defendants).

Defendants raise several objections to the plaintiff's discovery requests.

Defendants object to discovery requests directed to a related foreign non-party entity.

Defendants also object to the breadth and relevancy of some of the discovery requests.

---

[1]    In the instant lawsuit, plaintiff seeks damages for injuries suffered in a December
19, 2006 incident that occurred while plaintiff was employed by White Construction as a quality
control manager at the Allegheny Ridge Wind Farm construction site.  Defendant Gamesa
Energy USA, LLC contracted with White Construction to unload, assemble, install and test wind
turbines at the Allegheny site.  See Resp. to Pl.'s Mot. to Compel at 1 (Doc. No. 30).  Plaintiff
asserts that the incident involved a "hazardous wind turbine electric hoist" designed, sold,
manufactured, delivered and installed by defendants.  See Pl.'s Mem. of Law Supp. Mot. to
Compel at 1-2 (Doc. No. 27).  Defendants contend that a related non-party foreign entity
manufactured the turbine at issue.  (Defs.' Letter Brief (9/14/09) at 1.)  The turbine at issue
located at the Allegheny Ridge Wind Farm, including the nacelle and all access doors, hoist,
crane, chain and collection bag, shall be referred to herein as "Tower 19."

1.      **Discovery From a Foreign Non-Party Entity**

Plaintiff seeks information relating to, and the production of documents from, a Spanish non-party entity, Gamesa Eolica ("Eolica"). Eolica is a manufacturer of wind turbines worldwide. (Defs.' Letter Brief (9/14/09) at 1.) The turbine at issue in this lawsuit, Tower 19, was manufactured by Eolica. Tower 19 was installed and maintained by defendants. The discovery propounded by plaintiff includes interrogatories in which plaintiff seeks information about Eolica and/or its activities in Spain, and a request for production of documents in which plaintiff seeks documents from defendants and Eolica. At the hearing, defendants identified Eolica as their "parent." In their letter brief dated September 14, 2009, defendants informed the court that Eolica is a "related" corporation, sharing the same parent, Spanish entity Gamesa Corporacion Technologica, with defendants. This new information prompted plaintiff to submit an additional letter brief addressing discovery issues between "sister corporations."

The first issue before the court is whether defendants have the required "control" over the information in the hands of Eolica sought by plaintiff. Fed. R. Civ. P. 34(a) provides that a party may serve a request for production of documents that are "in the possession, custody or control of the party upon whom the request is served." The party seeking production of documents bears the burden of establishing the producing party's control over the documents. Camden Iron and Metal, Inc. v. Marubeni America Corp., 138 F.R.D. 438, 441 (D. N.J. 1991). "Control" has been defined as "the legal right, authority or ability to obtain documents upon demand." Id. See also U.S. Int'l Trade Comm'n v. ASAT, Inc., 411 F.3d 245, 254 (D.C. Cir. 2005) (same); Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue, 839 F.2d 131, 140 (3d Cir. 1988) (same). The determination of whether an entity has "control" over documents under Fed.

2

R. Civ. P. 34(a), is a "very fact specific" inquiry.  Pitney Bowes, Inc. v. Kern Int'l, Inc., 239 F.R.D. 62, 66 (D. Conn. 2006) (citations omitted).

Where the litigating party is the subsidiary and the parent possesses the records, courts have found control to exist on the following grounds: (1) the alter ego doctrine which involved piercing the corporate veil; (2) the subsidiary was an agent of the parent in the transaction giving rise to the lawsuit; (3) the relationship is such that the agent-subsidiary can secure documents of the principal parent to meet its own business needs and documents helpful for use in litigation; (4) there is access to documents when the need arises in the ordinary course of business; and (5) the subsidiary was marketer and servicer of parent's product in the United States.  Camden Iron, 138 F.R.D. at 441-42.

Cases "involving sister corporations under common control follow the same pattern as the cases involving a litigating subsidiary."  Gerling, 839 F.2d at 141.  Where sister corporations are involved, the "requisite control has been found only where the sister corporation was found to be the alter ego of the litigating entity, or where the litigating corporation has acted with its sister in effecting the transaction giving rise to the suit and is litigating on its behalf."  Heraeus Electro-Nite Co. v. Midwest Instrument Co., Inc., 2006 WL 3004877, at *3 (E.D. Pa. Oct. 18, 2006) (citing Gerling, 839 F.2d at 141).  Other courts have considered additional factors in determining whether to allow discovery against a non-litigating sister corporation.  See Alimenta (U.S.A.), Inc. v. Anheuser-Busch Cos., Inc., 99 F.R.D. 309, 312-13 (N.D. Ga. 1983) (even though court did not pierce corporate veil or find sisters to be alter egos, court found corporations "acted as one" where plaintiff bought goods from sister and resold them, goods shipped under control of sister, President of sister corporation involved in discovery, sister

3

corporations were in regular contact during course of transaction at issue in litigation, plaintiff's counsel participated with sister when sister involved in discovery); Perini America, Inc. v. Paper Converting Mach., Co., 559 F. Supp. 552, 553 (E.D. Wis. 1983) (court compelled discovery from plaintiff's foreign sister corporation where plaintiff marketed machine manufactured by sister and had common ownership). See also Heraeus Electro-Nite, 2006 WL 3004877, at *3 (defendant's request for discovery from plaintiff's foreign sister corporation denied where sisters' directors were not identical, sisters did not operate as one functional unit, and plaintiff did not use the documents to meet its own business needs); Pennwalt Corp. v. Plough, Inc., 85 F.R.D. 257, 263 (D. Del. 1979) (sister corporation need not respond to discovery where no evidence defendant and sister's business operations were so intertwined as to render meaningless their separate corporate identities).

Cases involving a litigating subsidiary and a foreign parent also are instructive.  In Afros S.P.A. v. Krauss-Maffei Corp., 113 F.R.D. 127 (D. Del. 1986), a patent infringement case, the court concluded that the "intracorporate relationship balances in favor of finding that defendant has control of the requested documents." Id. at 132.  In reaching this conclusion, the court considered various factors including that the foreign parent originally developed and patented the devices at issue and subsequently assigned the patent to the litigating subsidiary, the overlap of directors, officers and employees, and the financial relationship between the corporations.  In Cooper Ind., Inc. v. British Aerospace, Inc., 102 F.R.D. 918 (S.D. N.Y. 1984) the court ordered the defendant to produce documents in the hands of its non-party British parent where the parent manufactured the planes that defendant sold and serviced and the documents sought related to the planes that defendants worked on daily.  The court found it "inconceivable"

4

that the defendant would not have access to the requested documents and the ability to obtain them for its usual and normal course of business.  Id. at 919-20.

In Platypus Wear, Inc. v. Clarke Modet & Co., Inc., 2007 WL 4557158 (S.D. Fla. Dec. 21, 2007), the parent corporation was the litigating party and the opposing party sought documents in the possession of a wholly owned foreign subsidiary.  The court ordered the documents produced after considering the corporate structure of the entities, the connection of the entities to the transaction at issue, and whether the entity resisting discovery (the non-party subsidiary) would benefit from a favorable outcome to the litigation.  Id. at *4-5.  The court also noted that in the past, the party parent had obtained documents from the subsidiary without difficulty.  Id. at *4.

The determination in this case is whether plaintiff has established that, considering the intracorporate relationship between Eolica and defendants, defendants have the "legal right, authority or ability to obtain" the requested documents upon demand.  Defendants contend that Eolica has no involvement with the American corporations.  At the hearing, plaintiff submitted documents to the court that are relevant to determining the intracorporate relationship between defendants and Eolica.

Plaintiff submitted Exhibit P-1 (Bates No. 00484) at the hearing, which is an Incident Investigation Report, completed by an employee of one of the defendants, on Eolica letterhead regarding an incident involving a chain hoist that occurred on May 2, 2006, in Bear Creek, Pennsylvania.  On the exhibit, the party identified as responsible for revising the "chain hoist bag design" is "GEol," or Eolica.  (Exhibit P-1 at Bates No. 00484.)  Exhibit P-2 (Bates No. 00465) is an email from Eloy Jauregi Martin, identified by plaintiff as an employee of

Eolica, in which Mr. Martin describes an incident similar to that which occurred at Bear Creek, that occurred in Spain and the solutions the Spanish entity implemented.  Mr. Eloy emphasized the following: "One important point is that it is obvious that the employee was not watching the process, so please reinforce the communication of this incident through your people."  (Exhibit P-2 at Bates No. 00465.)

Exhibit P-3 (Bates Nos. 00358-00360) is a three page "PRL Procedure" report on Eolica letterhead regarding a November 15, 2006 incident involving the chain hoist system, which occurred at Locust Ridge, Pennsylvania.  In this Eolica document, the writer proposes that "all employees will be made aware of incident and will also be instructed to stay clear of area while hoisting in progress."  (Exhibit P-3 at Bates No. 00358.)  On the attached Incident Report, the unidentified drafter states as follows: "We had an equipment incident ...."  (Exhibit P-3 at Bates No. 00359 (emphasis added).)  The drafter did not state that only the defendant American corporations had an incident.  Exhibit P-4 (Bates Nos. 00491-00494) is a chain of emails exchanged after the December 2006 incident at issue in this lawsuit.  In the email dated January 26, 2007, the sender, Miguel Fabo, is identified on the email as an employee of Eolica's International Construction Department.  Mr. Fabo stated as follows: "In Allegheny we have 40 Turbines, so we need the necessary materials for those turbines.  By the time those materials arrived erection and comissioining [sic] works will already [sic] finish so Maintenance people should install them, or we should subcontract people to perform that work."  (Exhibit P-4 at Bates No. 00491 (emphasis added).)

Exhibit P-5 (Bates Nos. 00729-00730) is an email chain from December 22, 2006, after the incident involving plaintiff.  In the first email, Enrique Val, identified in the email as "Gamesa Eolica, Purchase Department," informs the recipients that:

> In Allegheny Wind farm we have had an accident with the Chain Hoist, due to that, and in order to avoid a second accident, we have to implement a new Chain bag design, already finished by the Spanish Supplier, Vicinay.
>
> We need urgently to change all the bags installed in US wind farms if we want to avoid bigger problems.  Due to that Vicinay is producing in Spain the first units in order to deliver them by plane to US.
>
> But of course the best solution in time and cost is to produce that design in US, you have contact [sic] several metal work suppliers able to produce this component.
>
> I will receive today the drawing directly from Vicinay, I'll forward then to you immediately.
>
> **It is imperative that by the 15th of January these metallic bags are produced in US, so you have to move quickly with the suppliers.**

(Exhibit P-5 at Bates No. 00730 (emphasis in original).)  On the first page of Exhibit P-5, the sender, Ignacio Uria (who lists an international telephone number), states that the email is in regards to the "metallic chain bag hoist; Allegheny" and directs the recipients to "always go through your official interfaces with the company."  (Exhibit P-5 at Bates No. 00729.)  Mr. Uria further states that "it is extremely rewarding the feeling of great team work being carried out."

Plaintiff attached two additional exhibits to his letter brief dated September 10, 2009.  The first is a Service Bulletin on Eolica letterhead addressing "Retrofit Metal Chain and Bag Safety Chain and Bracket Replacement."  (Bates Nos. 00190-00195.)  In this Bulletin, Eolica provides detailed procedures to retrofit all United States turbines.  The second exhibit is an OSHA Inspection Narrative regarding the December 19, 2006 incident at issue here.  (Bates

Nos. 00362-00369, 00186.)  In the OSHA Narrative, the Project Manager is identified as Miguel

Lacalle.  (Bates No. 00364.)  Mr. Lacalle is identified as a representative of Eolica.  (Bates No.

00186.)  The document later refers to a similar accident that occurred at Bear Creek in May 2006

and notes that the Bear Creek site was "run by Gamesa Eolica."  (Bates No. 00365.)  The OSHA

Narrative also reports that four Eolica representatives were present at the Allegheny site for the

OSHA inspection.  (Bates No. 00186.)

       These documents demonstrate that defendants and Eolica "acted as one" entity,

making liberal use of the pronoun "we" when discussing the turbines located in America.  See

Gerling, 839 F.2d at 141.  The exhibits reveal that Eolica took a leading role in deciding what

information was to be provided to workers in America regarding the turbines and chain hoists, in

directing the American entities on how to address the chain hoist design (forwarding redesign

drawings to the American entities from Spanish supplier Vicinay and directing that the "bags" be

produced in the United States by January 15), and in handling the Allegheny issue ("always go

through your official interfaces with the company").  The evidence demonstrates that there was a

free flow of information and documents regarding the chain hoists and turbines between

defendants and Eolica, and that defendants have "access to documents [from Eolica] when the

need arises in the ordinary course of business."  Camden Irons, 138 F.R.D. at 442.

       Defendants admit that they and Eolica share a common parent.  Plaintiff, as it was

his burden, did not produce evidence that the two corporations shared directors or officers.

However, the evidence presented did reveal that Eolica employees often were present at the

facilities in the United States during various investigations regarding the turbines.  For all these

reasons, the court finds that Eolica has "control" over the documents sought by plaintiff for the purposes of Fed. R. Civ. P. 34(a).

        2.      **Relevancy of Information Regarding Eolica**

        The next issue before the court is whether the information requested in the Interrogatories and Request for Production of Documents regarding Eolica is relevant.  The scope of discovery under the Federal Rules is very broad.  Under Fed. R. Civ. P. 26(b), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action."  Information is "relevant" if it "involves any matter that bears on, or that may reasonably lead to matters that could bear on, any issue that is or may be in the case."  Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

        Eolica manufactured Tower 19, the turbine at issue in this litigation, and defendants installed and maintained Tower 19.  According to documents submitted at the hearing and with the letter briefs, Eolica provided additional service regarding Tower 19, including, inter alia, servicing Tower 19, directing the modifications to Tower 19, and having representatives present at the investigation of the accident involving Tower 19.  Information concerning Tower 19 clearly is relevant.  Additionally, Eolica manufactured, serviced and was otherwise involved with the same turbines located in the United States and Spain.  At some of these other locations in the United States and abroad, accidents occurred similar to that at issue in this litigation. Information concerning the same type of turbine as Tower 19, regardless of its location, is relevant to this litigation as it may shed light on the decisions and actions of defendants herein with respect to Tower 19.  To the extent plaintiff's discovery requests seek information outside

9

of these parameters, i.e., regarding different types of turbines as compared to Tower 19, such information need not be produced at this juncture.

The court notes that some of plaintiff's requests in his Request for Production of Documents do not contain a time constraint. As such, those Requests are overly broad. The time constraint contained in plaintiff's Interrogatories, January 1, 2003 through the present, is reasonable and shall apply to plaintiff's Request for Production of Documents, unless a particular request contains a more limited time constraint, in which case the more limited time constraint shall apply.

An appropriate order follows.


BY THE COURT:


/s/ Thomas J. Rueter
THOMAS J. RUETER
Chief United States Magistrate Judge